No. 13-1890

In the

# United States Court of Appeals
for the Fourth Circuit

**TEMPIE ANN BELL,**
Plaintiff-Appellant,

v.

**ERIC SHINSEKI, SECRETARY,
DEPARTMENT OF VETERANS AFFAIRS**
Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA AT
GREENSBORO, NORTH CAROLINA

## BRIEF OF PLAINTIFF-APPELLANT

Daniel F. Read
Attorney at Law
115 E. Main St.
Durham, North Carolina 27701
919-683-1900
Counsel for Plaintiff

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1890__          Caption: __Bell v. Shinseki, DVA__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Tempie Ann Bell__
(name of party/amicus)

who is _____appellant_____, makes the following disclosure:
      (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
      If yes, identify entity and nature of interest:


5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:


6.    Does this case arise out of a bankruptcy proceeding?                          ☐ YES ☑ NO
      If yes, identify any trustee and the members of any creditors' committee:


Signature: _____  Daniel F. Read        Date: _____

Counsel for: Plaintiff

## CERTIFICATE OF SERVICE
*****************************

I certify that on ____date brief served____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Lynne P. Klauer, Esq.
Assistant US Attorney
PO Box 1858
Greensboro, NC 27402


_____        9/16/13
        (signature)                          (date)

JURISDICTIONAL STATEMENT                                        1

STATEMENT OF THE ISSUES                                        1

STATEMENT OF THE CASE                                          2

STATEMENT OF THE FACTS                                        2

ARGUMENT                                                      6

    Summary of Argument                            6

    Standard of Review–Applicable to Both Points   7

    The Decision Below                             8

    Review of Undisputed Facts                     8

    Disability Discrimination                      9

    Discrimination Based on Retaliation            14

CONCLUSION                                                    17

CERTIFICATE OF SERVICE                                        18

CERTIFICATE OF COMPLIANCE                                     19

# TABLE OF CASES AND AUTHORITIES

## Federal Cases

*AFGE, AFL-CIO, Local 2096 v. Federal Labor Relations Authority,* 738 F.2d 633 (4th Cir.1984) — 15

*Ballinger v. North Carolina Agricultural Extension Serv.*, 815 F.2d 1001 (4th Cir.), *cert. denied*, 484 U.S. 897, 98 L.Ed. 191, 108 S.Ct. 232 (1987) — 7

*Blocher v. Department of Veterans Affairs*, Appeal No.0120111937 (April 17, 2013) — 13

*Bracey v. OPM*, 231 F.3d 1356 (2001) — 12

*Brennerman v. Midcentral Health Sys.,* 366 F.3d 412 (6th Cir., 2004) — 10

*Celotex v. Catrett*, 477 U.S. 317, 91 L.Ed. 265, 106 S.Ct. 2548 (1986) — 7

*Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 143 L.Ed.2d 966, 119 S.Ct. 1597 (1999) — 12

*De Arroyo v. Sindicato de Trabajadores Packing, AFL-CIO*, 425 F.2d 281 (1st Cir., 1970) — 10

*Farwell v. Un*, 902 F.2d 282 (4th Cir.1990) — 7

*Haulbrook v. Michelin N. America*, 252 F.3d 696 (4th Cir., 2001) — 15

*International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 52 L.Ed.2d 396, 97 S.Ct. 1843 (1977) — 10

*Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir., 2012) — 15

*O'Donnell v. Vencor Inc.*, 466 F.3d 1104 (9th Cir., 2006) — 10

*Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 75 L.Ed. 403, 103 S.Ct.1478 (1983) — 14

*Reeves v. Sanderson Plumbing Products, Inc*, 530 U.S. 133, 147 L.Ed.2d 105, 120 S.Ct. 2097 (2000) — 14

*Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir.1985) — 7

*Schierhoff v. Glaxo Smith Kline Consumer Healthcare, LP,* 444 F.3d 961 (8th Cir. 2006) — 10

*Wilson v. Dollar General Corp.*, __F.3d __ (4th Cir. 2013) — 11

## Federal Statutes

5 C.F.R. §833.1203 — 12

28 U.S. Code §1291 — 1

--1--

## JURISDICTIONAL STATEMENT

The court has jurisdiction over the persons and subject matter in that this is an appeal of a civil matter. A final judgment disposing of all claims was entered in the United States District Court and appeal lies to this Court under 28 U.S. Code §1291.

## STATEMENT OF THE ISSUES

The District Court decided four issues, (1) that it had subject matter jurisdiction only over the matter of Plaintiff's discharge, (2) that Plaintiff could not prove she was illegally discharged because of disability discrimination, (3) that Plaintiff could not prove she was illegally discharged because of retaliation, and (4) that certain records were correctly sealed.

In this brief, Plaintiff will demonstrate that the District Court erred in deciding as a matter of law that Plaintiff could not prove wrongful discharge, as the evidence was not conclusive that she was incapacitated for all work. Additionally, she will show that the evidence allowed an inference of retaliatory motive.

--2--

## STATEMENT OF THE CASE

Plaintiff was terminated from her employment with the Department of Veterans Affairs, Durham Medical Center and filed an EEO claim. The notice closing her EEO claim stated she could file suit in the District Court, and she did so. That was decided against her on a motion for summary judgment by the United States; no other claims remain pending, and this appeal follows.

## STATEMENT OF THE FACTS

Tempie Ann Bell is a registered nurse who was employed at the Durham Veterans Affairs Medical Center ("DVAMC") for over 20 years. She was terminated effective March 11, 2011. After a back injury limited her ability to lift, Plaintiff worked as a diabetes educator from 2005 through January 2010, having been assigned to that position as part of a settlement agreement in an earlier discrimination suit. Part of the agreement was that she would obtain certification as a diabetes educator.

In September 2009, after she had just completed her masters in nursing education, funded by the VA (T. Bell Aff. ¶ 7, JA st 50), Defendant notified her she needed to get certified. Plaintiff never obtained certification as a diabetes educator.

--3--

It had been her understanding from talking to her supervisors while she was working on her Masters that she should focus her energy on completing it instead of worrying about the certification (T. Bell Aff. ¶ 6, JA at 46).

In January 2010, Plaintiff was reassigned from her position in diabetes education to a ward nursing position. The stated requirements of the ward nursing position were modified to accommodate Plaintiff's work restrictions. Despite these modifications, Plaintiff found the ward nursing job extremely difficult, especially due to her lifting restrictions (T. Bell Aff. ¶ 8, JA at 50). Even her preceptor on the ward felt that it was unsafe for Plaintiff to be assigned there (Sharon Faison Testimony before EEOC, JA at 96, 101). Her supervisor admitted she could not perform an essential function of the job, to handle patients in emergencies.

Plaintiff protested the reassignment to ward nursing and asked that she be allowed to continue in her role in diabetes education (T. Bell Aff. ¶ 7, JA at 47). She wound up filing suit over the alleged breach of contract, which wound up in federal court in June 2010, reference file 10-CV-475 (M.D.N.C., 2010). *Id.*

Plaintiff was also able to find administrative work in another section of DVAMC in late 2009 or early 2010, where work needed to be done and the supervisor was willing to take her on, but she was not permitted to take that position (T. Bell Aff. ¶ 8, JA at 48, D. Bell Aff. ¶ 8, JA at 58, Testimony of Joseph

--4--

Smith, JA at 105-6).

Plaintiff struggled to do the ward nursing duty from January to August 2010.  On August 10, 2010, Plaintiff fell at work. After a meeting where Gwen Waddell-Schultz, her second-line supervisor, threatened to suspend her and report her to the nursing board, she went to the employee health office, where she passed out (T. Bell Aff. ¶ ¶ 9-11, JA at 48-9).  When Plaintiff regained consciousness, she was on the floor and felt pain in her face, left shoulder, and left knee. She heard Jackie Rogers tell someone that Plaintiff had fallen and hit her head on the desk (T. Bell Aff. ¶ 12, JA at 49).  (Rogers later changed her story (D. Bell Aff. ¶ 11-2, JA at 57-8).) Plaintiff was helped into a wheelchair and taken from the room, and then to the ER.

The next day Plaintiff had MRIs taken and was diagnosed with a new tear of the meniscus of her left knee and a labral tear in her left shoulder (T. Bell Aff. ¶ 13-4, JA at 49-50; Dellaero Depo, p. 12, JA at 72).  Dr. Dellaero explained that these injuries were consistent with a fall and explained the mechanism by which they probably occurred (Dellaero Depo, pp. 13-6, JA at 74-7).

Plaintiff filed a workers compensation claim. DVAMC took the position that Plaintiff did not fall but rather was gently lowered to the floor.  In support of this position, DVAMC staff produced a reenactment of the events that included

--5--

photographs, a description of events, and witness statements. According to Dr.
Dellaero, the injuries he saw were inconsistent with Plaintiff having been assisted
to the ground (Dellaero Dep. 20-1, 28-9, JA at 61-2, 69-70). The claim has
remained denied and is now on appeal to the ECAB.[1]

Plaintiff requested FMLA and LWOP leave but these remained denied after
November 2010. She requested donations of leave from other employees but those
were blocked by the hospital administration (T. Bell Aff. ¶ 15, JA at 50). The only
communications she received from the hospital were letters threatening her job
because of her absence (T. Bell Aff. ¶ 16, JA at 51). She was carried as AWOL
after November 2010.

Plaintiff did not return to work at DVAMC any time after August 10, 2010
and no work, other than the ward nursing job, was ever offered to her.

On December 11, 2012, Plaintiff's application for disability retirement from
the VA was approved (JA at 182-5).

Defendant issued return to duty letters on December 27, 2010, and January
11, 2011, based on Plaintiff's continuing AWOL status (JA at 143-6), then a
notice of proposed discharge and discharge (JA at 147-52).

Since her discharge, Plaintiff has sought other employment in nursing

---

[1]Filed August 2013, no docket number yet assigned.

--6--

education or administration without success (T. Bell Aff. ¶ 19-20,, JA at 52). Dr. Dellaero felt she could not return to ward nursing but would encourage her to try to work in an administrative capacity (Dellaero Dep. at 18, JA at 79); his excuse of February 2011 expressed concern only about her ability to lift patients.

Plaintiff has filed several other EEO complaints against Defendant in the past, two of which are still in the administrative process: Case No. 2004-0558-2010100080 and Case No. 2004-0558-2010103561. In these she challenges the agency's reassignment from the diabetes education position to ward nursing and failure to provide her other reasonable accommodation; she never gave up the hope of being reassigned to education (T. Bell Aff. ¶ 7, JA at 47, and ¶ 17, st 51).[2]

## ARGUMENT

**Summary of Argument**

The District Court erred by finding it was futile for the agency to try to accommodate Plaintiff when her desire for accommodation was established, the assigned job was unsafe for her to do, and in fact it was futile for the employee to

---

[2]After the summary judgment documents had been filed the EEO judge made a finding that the VA had discriminated against Plaintiff on at least one occasion.

--7--

ask again for accommodation or try to get her physicians to release her to other work. Likewise the District Court erred by finding no retaliatory animus where there was a history of, and ongoing, struggle between the parties about working conditions.


**Standard of Review–Applicable to Both Points**

Review of a grant of summary judgment presents an issue of law and therefore is *de novo*. *See for example Farwell v. Un*, 902 F.2d 282, 287 (4th Cir.1990). Summary judgment is proper where there is no genuine issue as to any material fact; if so, the moving party is entitled to a judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. 317, 322, 91 L.Ed. 265, 273, 106 S.Ct. 2548, 2552 (1986). All inferences must be drawn in a light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). Summary judgment is a drastic remedy and should not be granted unless "it is perfectly clear that there are no genuine issues of material fact." *Ballinger v. North Carolina Agricultural Extension Serv.*, 815 F.2d 1001, 1004-05 (4th Cir.), *cert. denied*, 484 U.S. 897, 98 L.Ed. 191, 108 S.Ct. 232 (1987).

--8--

**The Decision Below**

Judge Osteen held that the only issue in this case was Plaintiff's termination, that other issues relevant to her transfer from diabetes education were outside the Court's jurisdiction, although she could use prior acts as background evidence in support of her timely-filed claims based on termination (*Slip op.* at 11-3, JA at 29-31).

He ruled that Plaintiff failed to prove that, before she was terminated, she was qualified to perform any job, with or without reasonable accommodation, and therefore could not prove disability discrimination after Defendant issued return to duty letters on December 27, 2010 and January 11, 2011 (*Slip op.* at 15-6, JA at 33-4). The Court held that the employer had no duty to engage in any interactive process to identify reasonable accommodation since there was no evidence that she would have been able to perform the essential functions of any job at the hospital, including diabetes educator, during the months she was absent without leave. Any attempt at accommodation would thus have been futile (*Slip op.* at 17-9, JA at 35-6).


**Review of Undisputed Facts**

For purposes of summary judgment, and therefore for the purposes of this

--9--

appeal, it is clear that Plaintiff protested her reassignment to ward nursing, that she was and still is actively involved in EEO litigation challenging her reassignment, and that she felt remaining in her diabetes educator position would have been a reasonable accommodation to her disability. She sought and found other administrative work that needed to be done in the hospital but that it was rejected without explanation. Plaintiff's preceptor felt it was unsafe for her to be on the ward and her supervisor felt she could not perform essential emergency functions. She had a new tear of her knee when she fell and her shoulder tear was most consistent with a sudden trauma. Plaintiff was denied the opportunity to obtain donated leave from other employees. The only job that Defendant ever offered her was the ward nursing job; that was the job she told to report back to. No effort was made in late 2010 and early 2011 to accommodate her with any kind of light duty or even to inquire if she could do administrative work. Plaintiff began looking for administrative work as soon as she was discharged, and Dr. Dellaero thought she could do it.

**Disability Discrimination**

The premise of the summary judgment on disability was that Plaintiff was incapable of doing any job at the hospital and therefore it would be futile for ths

--10--

hospital to engage in any interaction to try to accommodate her. However, the hospital staff had made it abundantly clear over the preceding year that no other job would be offered to her. It would have been equally futile for her to have asked--again--for an administrative position.

In *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 52 L.Ed.2d 396, 97 S.Ct. 1843 (1977), the Court made this clear: "When a person's desire for a job is not translated into a formal application solely because of [her] unwillingness to engage in a futile gesture [s]he is as much a victim of discrimination as is [s]he who goes through the motions of submitting an application." *Id.* at 365, 52 L.Ed.2d at 433-4, 97 S.Ct. at 1870.

Where an employer itself creates the situation that makes it impossible or futile for the employee to obtain relief, then the employer cannot then assert (and a judge should not find) that the employee is at fault for not filing properly. *De Arroyo v. Sindicato de Trabajadores Packing., AFL-CIO*, 425 F.2d 281, 291 n. 13 (1st Cir., 1970) (company could not argue that wrongfully discharged plaintiffs could not be rehired because they were now less useful than retained employees); *see also O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1114 (9th Cir., 2006) (employer had filed bankruptcy, tolling allowed).

The government cited two cases in its brief *Schierhoff v. Glaxo Smith Kline*

--11--

*Consumer Healthcare, LP*, 444 F.3d 961, 966 (8th Cir. 2006) and *Brennerman v.*
*Midcentral Health Sys.,* 366 F.3d 412, 420 (6th Cir., 2004). Both of these are
clearly distinguishable. Schierhoff was "worn out" from a long career doing heavy
mechanic work and no other work he could do was suggested. Accordingly his
protracted absences made accommodation unfeasible. Brennerman had been
discharged under a progressive points policy that called for automatic termination
for unexcused absences which had been piling up for 6 years. Moreover he failed
to mention the medical condition that allegedly caused his absence for over a
month after his suspension. Neither had a concurrent challenge to a reassignment
pending. Here, on the other hand, Plaintiff had ben successful in, and was fighting
to return to, work other than the onerous work the agency offered. She had been
sponsored by the agency to get a degree in education to move permanently to more
administrative/education work. And she had no discipline prior to being
reassigned. She had been trained expressly for the kinds of jobs the agency refused
to even consider for her.

The case of *Wilson v. Dollar General Corp.*, __F.3d __ (4th Cir. 2013), also
cited by the District Court, provides an interesting contrast.  There the only
accommodation requested was leave. The Court noted that as long as the employee
gives "adequate notice" of their request for accommodation, the burden shifts to

--12--

the employer to engage in the interactive process contemplated by the ADA/Rehabilitation Act. In that case, while it is true that Wilson, like Plaintiff, could not specify a date when he could return, he was only trying to return to one job he was physically unable to do when he was fired. He never identified other jobs he thought he could do. He was not currently engaged in administrative hearings against the employer to try to get an accommodation job back. He had not been penalized by discretionary decisions to cut off donated leave and denied LWOP. *Wilson*, while instructive, is thus clearly distinguishable.

Both the agency and the District Court noted, in support of their position, that Plaintiff had been approved for disability retirement. Approval for disability retirement means only that the employee cannot perform the duties of their regular position.  5 C.F.R. §833.1203; *Bracey v. OPM*, 231 F.3d 1356, 1358-60 (2001). If the agency will not accommodate them with a new regular position, or accommodate them in their old one, then they qualify. *Id.* at 1360. So the approval of disability retirement only means the agency could not or would not accommodate her–the agency did not contest on the grounds that there was work available. (Even if she had applied for and qualified for Social Security disability benefits, which requires proof that it is unreasonable to expect her to get any employment at all in the open market, that would not automatically disqualify her

--13--

from seeking accommodation from the agency. *See Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 802-4, 143 L.Ed.2d 966, 974-5, 119 S.Ct. 1597, 1602-3 (1999)).

The government may argue that all the medical notes say no duty at all and that, if she thought she could do light duty, Plaintiff should have asked her physicians for a new note that released her to administrative duty. Dr. Dellaero specifically addressed only lifting patients in February 2011. Under all the circumstances of the case, where she had been pursuing such a course for a year with no success, a reasonable employee in her position would have understood that such an effort would be futile. This is a question the jury should decide.

Where the agency itself creates the situation that makes it futile for the employee to request further accommodation, makes no effort to even inquire if she can do other work, cuts off leave that is available, and insists on returning the employee to a job that its own supervisor thinks is unsafe, there is at a minimum a jury question as to whether it has engaged in disability discrimination.[3] When the District Court found that it was futile for the agency to engage in any interactive

---

[3] In a recent administrative decision, *Blocher v. Department of Veterans Affairs*, Appeal No.0120111937 (April 17, 2013), the Commission ruled that the VA subjected the complainant to disability discrimination when it likewise flatly denied her request to telework part-time as a reasonable accommodation for her hip disorder.

--14--

process aimed at accommodation, it turned the table on, and blamed, the victim, for whom it was even more futile to ask again. This was error.

## Discrimination Based on Retaliation

The District Court assumed Plaintiff had satisfied her burden of presenting a prima facie case of retaliation, in that her EEO cases were still pending when she was discharged. However, it noted that no evidence was presented that suggested any rationale for discharge other than her continuing inability to work. And it dismissed as irrelevant in time other evidence, of the reassignment, of the SF-71s, and of the reenactment of the fall. It found that the deciding officials had nothing to do with these and their motivation in discharging Plaintiff was, as a matter of law, strictly a business decision.

As the Supreme Court has held repeatedly, decisions regarding whether an employment decision was discriminatory, since such is rarely admitted openly, are "sensitive and difficult," *Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 75 L.Ed. 403, 411, 103 S.Ct.1478, 1482 (1983), and usually hinge on careful analysis of circumstantial evidence. Proof that an employer's proffered explanation is false is but one type of circumstantial evidence that may justify a finder in rejecting the employer's explanation for discharge. *Reeves v. Sanderson*

--15--

*Plumbing Products, Inc*, 530 U.S. 133, 146, 147 L.Ed.2d 105, 119, 120 S.Ct. 2097, 2108 (2000).

Here the EEOC proceedings to challenge the original reassignment were still spending at the time Plaintiff was discharged. Agency staff assigned to supervise Plaintiff knew she was having trouble doing ward nursing; Waddell-Schultz obviously knew this because she was the one who threatened Plaintiff's nursing license on August 10, 2010. All Plaintiff's requests to the agency after August 10, 2010 were met with denials–her requests for workers compensation, for donated leave, for LWOP. She was a successful employee for over twenty years and the agency took the harsh position, despite valid medical excuses, of carrying her as AWOL.

The District Court relied on the fact that months had elapsed between many of the events alleged to show retaliatory motive and the actual discharge. Proximity in time may alone support a finding of intent, *see for example Haulbrook v. Michelin N. America*, 252 F.3d 696, 706 (4th Cir., 2001), its presence or absence is not determinative. This is especially so in a case such as this where there is uncontested proof of an ongoing battle between the agency and the discharged employee over reassignment and working conditions. *Compare Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir., 2012) (course of conduct is

--16--

clear proof of animus). Employment decisions are not made in a vacuum; the District Court isolated the decision to fire Plaintiff from its context, contrary to the approach this court has taken, especially with remedial statutes. *See AFGE, AFL-CIO, Local 2096 v. Federal Labor Relations Authority,* 738 F.2d 633, 636 (4th Cir.1984).

Additionally, it is established at least at this point that the only agency eyewitness to the fall, Rogers, told two different stories to David Bell. Whether Waddell-Schultz or Gigliotti actually knew the reenactment was a lie, it fits in with all the other evidence that Plaintiff was being targeted for elimination by management and that when they found a chance to do it they did. The fact that they never made any effort to seek other work for Plaintiff in late 2010 or asked her if she could do other work, as outlined, was disability discrimination, and supports the further inference that retaliation for her previous and ongoing protected activity was also a motivating factor. Again, Plaintiff does not contend at this point that she is entitled to judgment on this point, only that she is entitled to a trial by a jury.

For these reasons the District Court also erred in denying the retaliation claim.

--17--

## CONCLUSION

For the foregoing reasons the decision of the District Court should be

reversed and the case remanded for trial.

This day is September 16, 2013



_____

Daniel F. Read
Attorney for Plaintiff
State Bar No. 11172
115 E. Main St.
Durham, North Carolina 27701-3601
919-683-1900 (FAX 919-682-4955)
Email: readlaw@aol.com

--18--

## CERTIFICATE OF SERVICE

I, Daniel F. Read, hereby certify that I have this day served a copy of the foregoing document, namely: Brief, upon the following parties to this action by sending them a copy of the same by electronic transmission (email), same sent to them at their address below, and further that the document was announced sent by my server and no error report has since been received. Name and email address of person served:

Lynne P. Klauer, Esq.
Assistant United States Attorney
Middle District of North Carolina
P.O. Box 1858
Greensboro, North Carolina 27402
lynne.klauer@usdoj.gov

Served care of the US Court website per standard e-filing procedure

This day is September 16, 2013.



_____
Attorney for Plaintiff
115 E. Main St.
Durham, North Carolina 27701-3601
Telephone: 919-683-1900
Fax: 919-682-4955
Email: readlaw@aol.com
State Bar No. 11172

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 13-1890        **Caption:** Bell v. Shinseki, DVA

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the   type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]   this brief contains _approx 4000_ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]   this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]   this brief has been prepared in a proportionally spaced typeface using
   Wordperfect _____ [*identify word processing program*] in
   Time New Roman 14 pt _____ [*identify font size and type style*]; **or**

   [ ]   this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) _____

Attorney for Plaintiff _____

Dated: 9/16/2013 _____